1

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

3

4

IN RE:                                        :        CASE NO. 09-05922 (ESL)

AIDA LUZ CHICO PENA              :        CHAPTER 13

5

6

         Debtor                               :

_____:

7

8

9

10

SUCESION GONZALEZ COLLAZO      :
COMPOSED OF EDA GONZALEZ        :
COLLAZO; BLANCA GONZALEZ        :
COLLAZO; BRENDA GONZALEZ        :
RAMOS; FELIZ GONZALEZ JIMENEZ;  :
MARTA M. GONZALEZ; AND SONIA    :
GONZALEZ BELTRAN                      :        ADVERSARY NO. 10-00072

11

         Plaintiffs                           :

12

vs.                                              :

13

14

15

16

17

AIDA LUZ CHICO PENA; JEANNETTE   :
VANESSA GONZALEZ CHICO; ROSA     :
RAQUEL GONZALEZ CHICO; MARIA     :
DEL CARMEN GONZALEZ CHICO;        :
BLANCA GONZALEZ CHICO;              :
WESTERNBANK OF PUERTO RICO;       :
BANCO POPULAR DE PUERTO RICO      :
THE FEDERAL DEPOSIT INSURANCE    :
CORPORATION; JOHN DOE &             :
RICHARD DOE; INSURANCE              :
COMPANIES X, Y, AND/OR Z            :

18

         Defendants                          :

19

_____:

20

21

OPINION AND ORDER

22

         This adversary proceeding is before the court upon the Motion for Summary Judgment and

23

the Memorandum of Law in Support of the Motion for Summary Judgment filed on December 21,

24

2010 by the Sucesión González Collazo, composed of: Eda González Collazo; Blanca González

25

Collazo; Brenda González Ramos; Félix González Jiménez; Marta M. González Collazo; and Sonia

26

González Beltrán (hereinafter referred to as "Sucesión González Collazo" and "Plaintiff")  alleging

27

that the four (4) real properties included in Schedule A- Real Property in the bankruptcy lead case No.

28

09-05922[1] of Aida Luz Chico Peña (hereinafter referred to as "Debtor" or "Defendant") are not property of the estate pursuant to 11 U.S.C. §541 and belong to the Sucesión González Collazo (Docket Nos. 37 & 38). Debtor filed its Motion to Dismiss Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment on February 2, 2011 (Docket No. 48). Plaintiffs filed their Opposition to Defendant[s'] Motion for Summary Judgment and Reply to Defendants' Opposition on February 23, 2011 (Docket No. 54). Subsequently, Defendants filed their Motion to Dismiss Plaintiffs' Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment on February 24, 2011 (Docket No. 59). For the reasons set forth below, Plaintiffs' motion for summary judgment is hereby granted in part and Defendant's cross motion for summary judgment is hereby denied in part.

Background

Aida Luz Chico Peña filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on July 17, 2009. Debtor included in her Schedule A (Real Property) four (4) real properties. The Debtor in her Statement of Financial Affairs disclosed that she was a party in the court case No. LAC 2002-0054, Marta Miriam González Collazo v. Féliz González Collazo et. als v. Aida L. Chico Peña, and that the nature of the proceeding was a civil suit regarding the distribution of the assets of a decedent's estate (Docket No. 1 in lead bankruptcy case). Debtor included attorneys Jorge A. Hernández López; Jaime L. Pérez Valentín; Daniel A. Rivera Hernández and Leonides Graulau Quiñones in the Creditor Matrix listing. On July 17, 2009, the Debtor filed her Chapter 13 Payment Plan in which she proposes to sell two (2) real properties within 24 months, described as #5 Echegaray St. And #4 Echegaray St. in Lares, Puerto Rico, to partially fund the plan with a lump sum payment of $162,000 (Docket No. 2). The "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines" informed creditors that the deadline to file a proof of claim for all creditors (except a governmental unit) was November 30, 2009 (Docket No. 5 in lead case).

On September 25, 2009, Debtor filed an Urgent Request for Order to Show Cause as to why

---

[1]References to the lead case are to the entries and documents filed in the bankruptcy case, case number 09-05922(ESL).

1  attorneys Jorge A. Hernández López, Daniel A. Rivera Hernández and Jaime L. Pérez should not be

2  found in contempt of this court's stay Order for filing motions on or about July 30, 2009 regarding

3  remedies from state court (Docket No. 9 in lead case).  On September 28, 2009, this court granted

4  Debtor's urgent request, and thus ordered attorneys Jorge A. Hernández López; Daniel A. Rivera

5  Hernández, Jaime L. Pérez Valentín; and Leonides Graulau Quiñones to show cause within 20 days

6  why sanctions and damages should not be imposed for the alleged violation of the automatic stay

7  provisions of 11 U.S.C. §362. (Docket No. 11 in lead case).  On October 6, 2009, attorney Leonides

8  Graulau Quiñones filed a motion informing compliance with the Order to show cause (Docket No.

9  14). On October 13, 2009, attorney Jorge A. Hernández López filed a motion in compliance with the

10  Order to show cause (Docket No. 19). On October 15, 2009, attorneys Daniel A. Rivera Hernández

11  and Jaime L. Pérez Valentín filed a joint motion in compliance with the Order to show cause (Docket

12  No. 24).

13        On October 20, 2009, the Sucesión González Collazo filed a motion requesting relief and/or

14  modification of the automatic stay to continue a pre-petition state court civil action which began on

15  July 16, 2002, regarding the distribution and liquidation of a decedent's estate, in particular the

16  Sucesión González Collazo's claims and rights concerning certain assets (real estate properties) which

17  Debtor has included as part of the bankruptcy estate (Docket No. 22 in lead case). On November 2,

18  2009, the Debtor filed her opposition to the motion requesting the lifting and/or modification of the

19  automatic stay, based upon the following allegations; (i) "[t]here is no doubt that the real estate

20  properties listed in Schedule A of Debtor's bankruptcy petition are property of the estate and any

21  action to take control over it must be determined by the bankruptcy court" pursuant to 11 U.S.C.

22  §§1334 and 151 which establish the jurisdiction of the bankruptcy courts in cases that arise under the

23  bankruptcy code or related to one; (ii) the state court complaint against the Debtor (Defendant) was

24  filed on February 12, 2003 in which the Debtor's ownership over her real estate properties is being

25  disputed; (iii) the state court in over 6 ½ years has not issued a determination on this issue; (iv) the

26  property of the estate is not being protected by the state court proceeding, given that they will be

27  placed on sale and no trial has been held to determine whether the Sucesión González Collazo has

28  an interest over Debtor's properties; and (v) Sucesión González Collazo's request for relief from the

automatic stay should be denied because it would undermine the purpose of the bankruptcy since
"...Debtor's properties will be placed on risk without anybody having shown any convincing evidence
that there is any other person with ownership of any kind over her real estate property." (Docket No.
30 in lead case).  A hearing on the motion to lift the stay was held on November 13, 2009. The  court
held that: "upon the uncontested facts proffered to this court by the parties for the only purpose of the
motion to lift stay and, thus, do not constitute *res judicata* on the merits, the motion is hereby denied
without prejudice to any challenge the Movants may bring before this court." (Docket Nos. 40, 46).

On November 25, 2009, the Debtor filed an Amended Chapter 13 Payment Plan in which  she
proposes to sell two (2) real properties within 24 months, described as #5 Echegaray St. And #4
Echegaray St. in Lares, Puerto Rico, to partially fund the plan with a lump sum payment of $60,000
(Docket No. 37). Debtor's Chapter 13 plan was confirmed on December 17, 2009 (Docket No. 45).

Subsequently, on April 23, 2010, the Sucesión González Collazo filed the instant adversary
proceeding to obtain a declaratory judgment and enforceable order establishing that the real properties
Debtor included in her bankruptcy petition are not property of the bankruptcy estate, but of the
Sucesión González Collazo (Docket No. 1).   On May 11, 2010, Aida Luz Chico Peña; Jannette
Vanessa González Chico; Rosa Milagros González Chico; Raquel González Chico; María del Carmen
González Chico; and Blanca González Chico (hereinafter referred to as the "Defendants") filed their
answer to the complaint (Docket No. 6).  On May 12, 2010, the Defendants filed a motion for leave
to file an amended complaint (Docket No. 7).  On May 19, 2010, the court granted Defendants leave
to file the amended answer to the complaint and the same was filed on May 24, 2010 (Docket Nos.
8 & 10). On November 4, 2010, Plaintiffs filed an amended complaint (Docket No. 16). On December
16, 2010, Defendants filed their answer to the amended complaint (Docket No. 29). On December
21, 2010, Plaintiffs filed a motion for summary judgment and the memorandum of law regarding the
same (Docket Nos. 37 & 38).

Plaintiffs' memorandum of law presents the following legal issues: (i) the execution of the
deeds of sale do not validate the business transactions if the same are void under the legal dispositions
of the Puerto Rico Civil Code and Article 105 of the Puerto Rico Mortgage Law, 30 L.P.R.A. §2355;
(ii) the execution of the deeds of sale for the real properties  in controversy are not valid because there

4

was an underlying simulated transaction, which was that the decedent, Mr. Félix González Figueroa,
wanted certain real properties to constitute an advancement of the inheritance ("anticipo de herencia")
of the five daughters he had in common with Aida Luz Chico Peña (Jannette Vanessa González
Chico; Raquel González Chico; Blanca Luz González Chico; Rosa Milagros González Chico; and
María del Carmen González Chico) as expressed by him pursuant to a private document which was
signed by Debtor and Mr. Félix González Figueroa on June 18, 1981(Docket No. 38, pgs. 32-33 &
52-53); (iii) in the private document dated June 18, 1981, the Debtor recognized that it was with Mr.
Félix González's money that she bought the properties referenced in the private document and built
a house in one of the properties; (iv) Debtor did not acquire the real properties in controversy through
prescription by possession with good faith and proper title nor without good faith or proper title
pursuant to 31 L.P.R.A. §§5278 & 5280, because Mr. Féliz González Figueroa was in possession of
the real property in controversy until he died on April 3, 2002, thus the Debtor cannot claim that she
possessed the properties in controversy in concept of ownership before Mr. Féliz González Figueroa's
death; (v) the distribution of the estate of Mr. Féliz González Figueroa commenced on July 16, 2002;
(vi) the Debtor filed the bankruptcy petition in bad faith to defeat state court litigation; and (vii)
Plaintiffs seek to revendicate the real properties in controversies pursuant to 31 L.P.R.A. §1111
(Docket No. 38).

On December 22, 2010, Defendants filed a motion to dismiss Plaintiff's motion for summary
judgment for failure to comply with Fed. R. Civ. P. 56(b) (Docket No. 39). On December 22, 2010,
Plaintiffs filed a statement of undisputed facts in support of their motion for summary judgment in
conformity with L. Cv. R. 56 (D.P.R. 2010) (Docket No. 40). On December 24, 2010, the Plaintiff
filed an answer to Defendants' motion to dismiss their motion for summary judgment (Docket No.
41).  On December 24, 2010, Defendants filed a motion in response to Plaintiff's response to the
motion to dismiss for summary judgment for failure to comply with L. Cv. R. 56, stating that Plaintiff
has failed to comply with Fed. R. Civ. P. 56(e) because their statement of alleged uncontested facts
does not make specific record citations (Docket No. 42). On December 27, 2010, Plaintiff filed the
second  amended statement of undisputed facts in support of its motion for summary judgment and
in conformity with L. Cv. R. 56 (Docket No. 43). Subsequently, on December 27, 2010, Plaintiff filed

5

1   its Answer to Defendant's second motion to dismiss the motion for summary judgment by which it

2   states that the motion for summary judgment complies with L. Cv. R. 56 but that it has included an

3   "extremely detailed Statement of Facts which provides extremely record citation" (Docket No. 44).

4

5        On February 2, 2011, Defendants filed a motion to dismiss Plaintiff's motion for summary

6   judgment and Defendants' cross motion for summary judgment which included the following; (1)

7   Defendants' Answer to Plaintiff's Statement of Uncontested Facts in Support of their Motion for

8   Summary Judgment and Defendant's Statement of Uncontested Facts in Support of their Opposition

9   thereto and their Cross-Motion for Summary Judgment; and (2) Defendants' Memorandum of Law

10  in Support of their Opposition to Plaintiff's Motion for Summary Judgment and in Support of

11  Plaintiff's Cross-Motion for Summary Judgment (Docket No. 48). Defendants' memorandum of law

12  addresses the following legal issues: (i) Defendants agree with Plaintiff that the Property Registry

13  does not afford *per se* property rights on the person who are registered as the owners of a recorded

14  property; (ii) the Property Registry only provides protection to third parties, who in good faith, acquire

15  property rights relying on the entries registered in the Property Registry; (iii) Article 106 of the Puerto

16  Rico Mortgage Law establishes that, "[w]ith regard to adverse possession on behalf of the recorded

17  titleholder, the registration shall be legitimate title, and it shall be assumed that he has owned it

18  publicly, peacefully, uninterruptedly and in good faith during the time the entry is in force, and that

19  of the predecessors from whom he acquired it." 30 L.P.R.A. §2356; (iv) Aida Luz Chico in

20  conformity with 30 L.P.R.A. §2356 commenced possessing the properties in controversy publicly,

21  peacefully, uninterruptedly and in good faith since at least 1981; (v) the registration of the properties

22  in the Property Registry is in accordance with the requirement of proper title ("justo título") under 30

23  L.P.R.A. §2356; (vi) good faith of the possessor is defined in Article 1850 of the Puerto Rico Civil

24  Code which provides, "[g]ood faith of the possessor consists in his belief that the person from whom

25  he received the thing was the owner of the same, and could convey his title" 31 L.P.R.A. §5271; (vii)

26  proper title is defined in Article 1852 of the Puerto Rico Civil Code which provides, "[b]y a proper

27  title is understood that which legally suffices to transfer the ownership or property right, the

28  prescription of which is in question" 31 L.P.R.A. §5273; (viii) the persons who could have initiated

6

1   a claim against Debtor; namely Mr. Félix González Figueroa and Mrs. Juana Collazo González were

2   residents of Lares during their whole life; and (ix) Plaintiff's allegation of Debtor's bad faith in filing

3   the bankruptcy petition lacks foundation and should be addressed in the legal bankruptcy case and

4   not in the adversary proceeding (Docket No. 48).

5        On February 23, 2011, the Plaintiff filed its Opposition to Defendants' Motion for Summary

6   Judgment and Reply to Defendants' Opposition by which it argues the following: (i) Defendant Aida

7   Luz Chico Peña does not satisfy the requirements necessary to acquire the real properties in

8   controversy by adverse possession because she possessed the same by an act of mere tolerance

9   permitted by the owner of the properties, Mr. Félix González; (ii) the private document executed by

10   Defendant Aida Luz Chico Peña and Mr. Félix González Figueroa on June 18, 1981, does not state

11   that Mr. Félix González donated the money which was used to purchase the real properties to

12   Defendant Aida Luz Chico Peña; (iii) Defendant Aida Luz Chico Peña did not possess the real

13   properties in controversy with good faith and proper title because she did not give any money to Mr.

14   Félix González to buy these properties and it was Mr. Félix González who purchased the properties;

15   (iv) Mr. Félix González Figueroa was in possession of the real properties in controversy until his

16   death on April 3, 2002, thus Defendant Aida Luz Chico Peña cannot claim that she possessed the

17   properties in controversy as owner of the same before Mr. Félix González Figueroa's death; (v) a

18   distribution and liquidation of Mr. Félix González Figueroa's estate was commenced on July 16, 2002

19   interrupting Defendant Aida Luz Chico Peña's possession; and (vi) Defendant Aida Luz Chico Peña

20   does not satisfy the requirements of acquiring the properties in controversy by adverse possession due

21   to the following facts: (1) "Félix González was the only one that worked in the *more uxorio*

22   relationship;" (2) "he paid the properties with his money;" (3) "he decided which property to buy, sell

23   or build;" (4) "he paid all the expenses and utilities for the properties;" and (5) "he possessed and

24   behaved like the owner of the properties until his death." (Docket No, 54).

25        Subsequently, on February 24, 2011, the Defendants filed a second Motion to Dismiss

26   Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment

27   by which they present the following arguments: (i) irrespective of whether the intended donee was

28   Aida Luz Chico Peña or her daughters, Mr. Félix González Figueroa detached himself of the monies

1   in question and Aida Luz Chico Peña was not a mere depository of such funds; (ii) the monies were

2   used by Aida Luz Chico Peña to purchase the real estate properties under her name, a conveyance

3   perfected through a public deed which after having been recorded in the Property Registry made

4   applicable the provisions of 30 L.P.R.A. §2356; (iii) "...the potential for the existence of a *more-*

5   *uxorio* concubinage between Defendant Aida Luz Chico Peña and Mr. Félix González Figueroa

6   impedes the grant of the motion for summary judgment in the way it has been framed by plaintiffs;"

7   (iv) Article 106 of the Puerto Rico Mortgage Law, 30 L.P.R.A. §2356 requires that the person who

8   is in possession and is the recorded titleholder of the property in controversy prove that he or she is

9   the recorded title holder; (v) 30 L.P.R.A. §2356 does not conflict with the provision of the Puerto

10  Rico Civil Code that compels proper title; (vi) the origin of the monies used to purchase the real estate

11  properties has no bearing on the purchaser's good faith because in the context of the adverse

12  possession doctrine, the "[g]ood faith of the possessor consists in his belief that the person from

13  whom he received the thing was the owner of the property and could convey title." 31 L.P.R.A.

14  §5271; and (vii) the adverse possession doctrine does not require that title to the property be obtained

15  by value (Docket No. 59). Lastly, partial judgments were entered dismissing the adversary proceeding

16  as to co-defendants Westernbank Puerto Rico; Federal Deposit Insurance Corporation (FDIC) as

17  receiver of Westernbank; and the Federal Deposit Insurance Corporation (FDIC) in its corporate

18  capacity. (Docket Nos. 65 & 78).

19                              Uncontested Material Facts

20      1.  Defendant Aida Luz Chico Peña and the decedent Mr. Félix González Figueroa were in

21  a relationship in which they procreated five (5) daughters out of wedlock. Mr. Félix Gonzalez

22  Figueroa was legally married to Juana Collazo González.

23      2. Félix González Figueroa passed away on April 3, 2002 intestate. He was married to Juana

24  M. Collazo.

25      3.  Mr. Félix González Figueroa and Aida Luz Chico Peña had a relationship in which they

26  procreated the following heirs: Jannette Vanessa González Chico; Raquel González Chico; María Del

27  Carmen González Chico; Rosa Milagros Gonzalez Chico; and Blanca Luz González Chico.

28      4. Aida Luz Chico Peña appears as the owner in the Property Registry, of the properties

8

included in state court case number L AC2002-0054 and in the bankruptcy petition in case number 09-05922(ESL).

5. A private document was executed on June 18, 1981 between Aida Luz Chico Peña and Mr. Félix González Figueroa in which they both recognized that Aida Luz Chico Peña bought certain properties with monies received from Mr. Félix González Figueroa and registered the same under her name in the Property Registry. Aida Luz Chico Peña bought the following real estate properties:

(A) "Property located at #126 Comercio Street, Lares, 2 story small building with 4 apartments. 1- 3 bedrooms and 1 bathroom; 2- 2 bedrooms and 1 bathroom; 3- 3 bedrooms and 1 bathroom; 4- 3 bedrooms and 1 bathroom."

(B) "Residential property located at #125 Comercio Street, Lares, PR, consisting of a 2 story concrete house with 4 bedrooms and 3 bathrooms, land of approximately 2 'cuerdas'"

(C) "Residential property located at #4 Echagaray Street, Lares, PR, consisting of a concrete house with 3 bedrooms and 1 bathroom."

(D) "Residential Property located at #5 Echagaray Street, Lares, PR, consisting of a concrete house with 4 bedrooms and 2 bathrooms and car port."

6. The properties listed in the preceding paragraph are the subject of the instant action.

7. In the above referenced private document, Mr. Félix González Figueroa and Aida Luz Chico Peña acknowledged that the properties that are registered under the name of Aida Luz Chico Peña were acquired with monies from Mr. Félix González Figueroa.

8. At the time the aforementioned private document was signed, Mr. Félix González Figueroa was married to Juana Collazo.

9. In the FIFTH paragraph of the private document signed by Mr. Félix González Figueroa and Aida Luz Chico Peña, the former expressed his intention that the properties bought under Aida Luz Chico Peña's name be given to the daughters they have in common in concept of their inheritance.

10. At the time the aforementioned private document was executed, Mr. Félix González Figueroa was married to Juana Collazo. Mrs. Juana Collazo never appeared in this document to

9

consent the transfer of property.

11. The private document was signed by Mr. Félix González Figueroa and Aida Luz Chico Peña before a Notary Public, in Lares, Puerto Rico.

12. Juana Collazo passed away on September 9, 1996.

13. Aida Luz Chico Peña is in the physical (natural) possession of the properties.

14. Aida Luz Chico Peña has been uninterruptedly in possession of the properties subject of this action since they were acquired under her name through public deeds in 1980 and 1981.

15. Aida Luz Chico Peña has been a resident of Lares, Puerto Rico all her life.

16. Aida Luz Chico knows from first hand knowledge that both Mr. Féliz González Figueroa and Juana Collazo, lived uninterruptedly in Lares, Puerto Rico, until their respective deaths.

17. The state court case was filed in the year 2002.

18. In the state court case, Marta Miriam González Collazo v. Féliz González Collazo et als., Num. LAC 2002-00054, Aida Luz Chico Peña in a deposition (pg. 43 of the deposition transcript) regarding such case, testified on February 8, 2006, that she did not give Mr. Féliz González money and what she would do to help him (Mr. Féliz González Figueroa) with the business was to "[t]hen pray to God so that everything will go well."

19. Mrs. Aida Luz González Chico admitted on page 55 of the above referenced deposition that Mr. Féliz González Figueroa paid for everything, including utilities.

20. Aida Luz Chico Peña mortgaged one of the properties in #126 Comercio Street, Lares with Westernbank.

21. Westernbank was closed by the Federal Deposit Insurance Corporation on April 30, 2010.

## Applicable Law and Discussion

*Standard for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, is applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Bankr. P. 7056; *see also*, In re Colarusso, 382

F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing

of actions in which there is no genuine issue as to any material fact or in which only a question of law

is involved."  10A Wright, Miller & Kane, Federal Practice and Procedure 3d§ 2712 at 198.  "Rule

56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief

by introducing outside evidence showing that there are no fact issues that need to be tried."  Id at 202-

203.  Summary judgment is not a substitute for a trial of disputed facts; the court may only determine

whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.

Id at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion,

a party fails to make a showing sufficient to establish the existence of an element essential to its case

and upon which it carries the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986).  The moving party must "show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be

in dispute thereby requiring deference to the finder of fact.  Furthermore, the disputed facts must be

"material" or determinative of the outcome of the litigation.  Hahn v. Sargent, 523 F.2d 461, 464 (1st

Cir. 1975), cert. denied, 425 U.S. 904 (1976).  When considering a petition for summary judgment,

the court must view the evidence in the light most favorable to the nonmoving party.  Poller v.

Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st

Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in

demonstrating its legal entitlement to summary judgment.  Adickes v. Kress & Co., 398 U.S. 144, 157

(1970).  See also López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir.

1991).  It is essential that the moving party explain its reasons for concluding that the record does not

contain any genuine issue of material fact in addition to making a showing of support for those claims

11

1  for which it bears the burden of trial. <u>Bias v. Advantage International, Inc.</u>, 905 F.2d 1558, 1560-61

2  (D.C. Cir. 1990), <u>cert. denied</u>, 498 U.S. 958 (1990).

3        The moving party cannot prevail if any essential element of its claim or defense requires trial.

4  <u>López</u>, 938 F.2d at 1516.  In addition, the moving party is required to demonstrate that there is an

5  absence of evidence supporting the nonmoving party's case.  <u>Celotex</u>, 477 U.S. at 325.  <u>See also</u>,

6  <u>Prokey v. Watkins</u>, 942 F.2d 67, 72 (1st Cir. 1991); <u>Daury</u>, 842 F.2d at 11.  In its opposition, the

7  nonmoving party must show genuine issues of material facts precluding summary judgment; the

8  existence of some factual dispute does not defeat summary judgment.  <u>Kennedy v. Josepthal & Co.,</u>

9  <u>Inc.</u>, 814 F.2d 798, 804 (1st Cir. 1987).  <u>See also</u> <u>Kauffman v. Puerto Rico Telephone Co.</u>, 841 F.2d

10  1169, 1172 (1st Cir. 1988); <u>Hahn</u>, 523 F.2d at 464.  A party may not rely upon bare allegations to

11  create a factual dispute but is required to point to specific facts contained in affidavits, depositions

12  and other supporting documents which, if established at trial, could lead to a finding for the

13  nonmoving party.  <u>Over the Road Drivers, Inc. v. Transport Insurance Co.</u>, 637 F.2d 816, 818 (1st Cir.

14  1980).

15        The moving party has the burden to establish that it is entitled to summary judgment; no

16  defense is required where an insufficient showing is made.  <u>López</u>, 938 F.2d at 1517.  The nonmoving

17  party need only oppose a summary judgment motion once the moving party has met its burden.

18  <u>Adickes</u>, 398 U.S. at 159.

19

20  *11 U.S.C. §541(a) Property of the Estate*

21        Sections 541 and 1306 of the Bankruptcy Code define what constitutes property of a debtor's

22  estate in a Chapter 13 bankruptcy case. Section 541(a)(1) states:

23      "[t]he commencement of a case under section 301, 302, or 303 of this title creates an estate.
   Such estate is comprised of all the following property, wherever located and by whomever
24      held:
           (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or
25          equitable interests of the debtor in property as of the commencement of the case." 11
           U.S.C. §541(a)(1).
26

27  Section 541(a)(1) includes the debtor's interest in real property. <u>See</u> Allan N. Resnick & Henry J.

28  Sommer, 5 <u>Collier on Bankruptcy</u> ¶541.04 (16th ed. 2011). The provisions of Section 541(a) are broad

in nature and include in the estate any property made available by other provisions of the Bankruptcy Code. See United States v. Whiting Pools, Inc., 462 U.S. 198, 204-205 & n.9, 103 S. Ct. 2309, 76 L. Ed. 2d 515 (1983). The legal interests of the Debtor in the real estate properties must be determined pursuant to state law. Beatrice v. Braunstein (In re Beatrice), 296 B.R. 576, 580 (1st Cir. B.A.P. 2003) citing In re Eastmare Dev. Corp., 150 B.R. 495 (Bankr. D. Mass. 1993), and McNeilly v. Geremia (In re McNeilly), 249 B.R. 576 (B.A.P. 1st Cir. 2000).

*Acquisitive Possession secundum tabulas or in conformity with the Property Registrar*

The first argument brought by Plaintiff's is that the defense of acquisitive possession in conformity with the Property Registrar or *secundum tabulas* is incorrect because the Debtor fails to satisfy the necessary requirements under this doctrine. Article 106 of the Puerto Rico Mortgage Law, 30 L.P.R.A. §2356 provides;

> "[w]ith regard to adverse possession on behalf of the recorded titleholder, the registration shall be the legitimate title, and it shall be assumed that he has owned it publicly, peacefully, uninterruptedly and in good faith during the time the entry is in force, and that of the predecessors from whom he acquired it." 30 L.P.R.A. §2356.

Article 106 of the Puerto Rico Mortgage Law must be read in conjunction with Articles 1840-1855 and 1857-1860 of the Puerto Rico Civil Code, 31 L.P.R.A. §§5261-5275 & §§5278-5281, that establish the legal requirements for prescription of ownership and other property rights. Article 1841 of the Puerto Rico Civil Code, 31 L.P.R.A. §5262, establishes the character of the possession by providing, "[p]ossession must be in the capacity of an owner, public, peaceful, and uninterrupted." 31 L.P.R.A. §5262. Article 1850 of the Puerto Rico Civil Code defines the possessor's good faith as "...consist[ing] in his belief that the person from whom he received the thing was the owner of the same, and could convey his title." 31 L.P.R.A. §5271. Article 1852 of the Puerto Rico Civil Code defines proper title as, "...that which legally suffices to transfer the ownership or property right, the prescription of which is in question." 31 L.P.R.A. §5273. Moreover, Articles 1853 and 1854 of the Puerto Rico Civil Code require that, "the title for prescription must be true and valid" and that "proper title must be proven; it never can be presumed." 31 L.P.R.A. §§5274 & 5275. Article 1857 of the Puerto Rico Civil Code provides that, "[o]wnership and other property rights in real property shall

13

prescribe by possession for ten (10) years as to the persons present, and for twenty (20) years with regards to those absent, with good faith and with proper title." 31 L.P.R.A. §5278. In the case of prescription by uninterrupted possession without title or good faith the term is for thirty (30) years without distinction between present and absent persons. 31 L.P.R.A. §5280. The following rules are used to compute the time necessary for prescription;

> "[i]n the computation of the time necessary for prescription, the following rules shall be observed:
>> (1) The actual possessor may complete the time necessary for prescription by adding to his time that of his constituent.
>> (2) It is presumed that the actual possessor, who may have been a possessor at a former period, has continued to be such possessor during the time intervening, unless there is proof to the contrary.
>> (3) The day on which the time begins to run is considered as a whole day, but the last day must be wholly completed." 31 L.P.R.A. §5281.

This court finds that Defendant's reliance on the doctrine of acquisitive possession *secundum tabulas* or in accordance with the Property Registry is misplaced in light of the rationale behind this particular doctrine. Spanish commentators Roca Sastre and Roca-Sastre Muncunill explain that the reason Article 35 of the Mortgage Law of Spain (which is equivalent to Article 106 of the Puerto Rico Mortgage Law) was enacted is to enable the registered titleholder that acquired from a *non dominus*, meaning a person who did not have ownership (property rights) over the real property, and who is not protected by the figure of the third party who acquired property in good faith, better known as the "tercero registral" codified in Article 34 of the Mortgage Law of Spain (Article 105 of the Puerto Rico Mortgage Law), to acquire acquisitive possession *secundum tabulas* of a real property through ordinary prescription, meaning with good faith and proper title. See Ramón M. Roca Sastre & Luis Roca-Sastre Muncunill, Derecho Hipotecario, Vol. II, 9-12, Barcelona, Ed. Bosch (7th ed. 1979). Three (3) requirements are necessary for the doctrine of acquisitive possession *secundum tabulas,* codified in Article 106 of the Puerto Rico Mortgage Law, to be applicable; namely; (1) the registered titleholder and the possessor of the real property must converge in the same person; (2) the ownership and property rights must be susceptible of possession; and (3) the registered titleholder is an *ad usucapionem* possessor because he or she acquired the property from a *non dominus*, and is not protected by the figure of the "tercero registral" or the third party that purchased a real property in

14

good faith. See Id at 18-19.

In the instant case, it is uncontested that Debtor Aida Luz Chico Peña is the registered titleholder of the four (4) real estate properties (parcels of land numbers 3787, 3752, 13,122 & 5488) that were purchased by her through four (4) sale and purchase deeds that were in turn recorded in the Property Registry (Docket No. 38, pgs. 57-61). The Defendants presented certified copies of the original folios of the Property Registry for the above referenced properties which include their description and also the dates in which the same were purchased by Debtor Aida Luz Chico Peña. Parcel #3787 was purchased by Debtor Aida Luz Chico Peña on January 31, 1980 and the sales and purchase deed was presented to the Property Registrar for recordation on August 14, 1980 (Docket No. 38, pg. 58). Parcel # 3722 was purchased by Debtor Aida Luz Chico Peña on January 31, 1980 and the sales and purchase deed was presented to the Property Registrar for recordation on October 15, 1980 (Docket No. 38, pg. 59). The sales and purchase deed for parcel #13,122 was presented to the Property Registrar for recordation on October 25, 1984. The folio for this parcel does not include the date Debtor Aida Luz Chico Peña purchased this parcel of land (Docket No. 38, pg. 60). Parcel #5480 was purchased by Aida Luz Chico Peña on May 24, 1979 and the sales and purchase deed was presented to the Property Registrar for recordation on June 14, 1979 (Docket No. 38, pg. 61).

This court finds that the Debtor fails to satisfy the third requirement for the doctrine of acquisitive possession *secundum tabulas* to be applicable. Aida Luz Chico Peña purchased the four (4) properties from their rightful owners (not from a *non dominus*). The doctrine of acquisitive prescription *secundum tabulas* is inapplicable because Aida Luz Chico Peña bought these properties from third parties that had ownership rights over the real properties and which were duly registered in the Property Registrar. Thus, she did not have to acquire the same through acquisitive prescription *secundum tabulas*.

*Relative Contractual Simulation*

Plaintiff's second argument is that the execution of the sale and purchase deeds for the above referenced properties are not valid because there was an underlying simulated transaction (or false consideration) which was that the decedent, Mr. Félix González Figueroa, wanted certain real properties to constitute an advancement of the inheritance ("anticipo de herencia") of the five

15

daughters he had in common with Aida Luz Chico Peña. Mr. González Figueroa's intentions were expressed in a private document which was signed on June 18, 1981. It is an uncontested fact that the real properties in controversy which are registered under the name of Aida Luz Chico Peña were acquired with monies from Mr. González Figueroa. It is also an uncontested fact that the FIFTH paragraph of the private document signed by Mr. Félix González Figueroa and Aida Luz Chico Peña, the former expressed his intention that the properties bought under Aida Luz Chico Peña's name be given to the daughters they have in common in concept of their inheritance. [2]

---

[2] The text of the translated private document states the following: "In Lares, Puerto Rico, on the 18th of June of 1981.

APPEAR

Mr. Felix Gonzalez Figueroa, who states that he is of legal age, married, farmer and resident of Lares, Puerto Rico.

AND

Mrs. Aida Luz Chico Peña, who states that she is a female, of legal age, single, a homemaker and resident of Lares, Puerto Rico; and freely

STATE AND AGREE

FIRST: That they are the father and the mother of the following female children: Rosa Milagros, Jannette Vannessa, Maria del Carmen, Blanca Luz and Raquel, all bearing the last name Gonzalez-Chico.

SECOND: That with monies received from Mr. Félix Gonzalez Figueroa, Mrs. Aida Luz Chico Peña purchased in her name, the following real property

(A) From Mr. Juan Rosado, farm number 5,480, recorded on folio 207, Lares tome 114 and located on 125 Comercio Street in Lares, Puerto Rico.

(B) From Mr. Juan Bautista Gonzalez Silva, farm number 3,787, recorded on Folio 99, Lares Tome 92 and farm number 3,752, recorded on folio 9 [illegible], Lares tome 74. These two farms are comprised of two parcelas each, which share a border and are located on #126 Comercio Street in Lares, Puerto Rico.

The Public Deed by means of which property "B" described above was purchased, were granted in January 1980 but the Deeds of Sale were done in 1979.

THIRD: That with his own funds Mr. Félix González Figueroa built between 1979 and 1980 a dwelling place on the aforementioned property.

FOURTH: That the deponents state that the money paid out by Mr. Felix Gonzalez Figueroa, as explained in paragraphs Second and Third, was an advance on the inheritance that at his passing shall go to his five daughters who bear the GONZALEZ-CHICO last name, mentioned in the First paragraph and MRS. AIDA LUZ CHICO PENA so accepts.

FIFTH: Mr. Felix Gonzalez Figueroa states that he owns enough assets that these disbursements do not affect his other children's inheritance rights nor his wife's common property and that, upon his death, he wishes that these properties, farms #3787, #3752 and 5,480 and the homes [that] were enclaved in them be adjudicated as an inheritance to his five daughters bearing the last name

16

Article 1227 of the Puerto Rico Civil Code provides that; "[c]ontracts without consideration or with an illicit one have no effect whatsoever. A consideration is illicit when it is contrary to law and good morals." 31 L.P.R.A. §3432. The doctrine of relative contractual simulation is based on the concept of false consideration in contracts and is codified in Article 1228 of the Puerto Rico Civil Code, 31 L.P.R.A. §3433, which establishes that, "[t]he statement of a false consideration in contracts shall render them void, unless it be proven that they were based on another real and licit one." 31 L.P.R.A. §3433. Thus, for the relative contractual simulation to be valid, the underlying concealed transaction must be based on valid (real) consideration. See Martínez v. Colón Franco, 125 D.P.R. 15, 25. Relative contractual simulation differs from absolute contractual simulation because in the latter the contracting parties have created an appearance of a contract without any underlying consideration, thus there is simply a simulated contract but there is no underlying real transaction under a dissimulated contract. See José Puig Brutau, Fundamentos de Derecho Civil, 444, Barcelona, Ed. Bosch (3rd ed. 1988). "In legal affairs, simulation in particular occurs when the parties in agreement deliberately make statements different from the internal will, in order to deceive third persons." Reyes v. Jusino Diaz, 116 D.P.R. 275, (1985), 16 P.R. Offic. Trans. 338, 347, April 3, 1985 citing L. Carriota Ferrara, El Negocio Jurídico, 440-441 (N. Albaladejo trans.) Madrid, Ed. Aguilar (1956).

The doctrine of relative contractual simulation recognizes various forms in which the contractual simulation may occur such as; (i) simulation in the nature of the contract; (ii) in the

Gonzalez-Chico.

SIXTH: The deponents accept that if any part of this document is legally declared null and void, the rest of is shall remain valid.

SEVENTH: I, The Notary Public, having admonished the deponents of the convenience and desirability of what is herein expressed and accepted by them be done by Public Writ and Last Will and Testament, which they decide not to do at present, since Mr. Félix Gonzalez Figueroa wishes to reach an agreement with his wife and other heirs as to the properties that shall be adjudicated to each one of them at his death.

IN WITNESS WHEREOF they set their hand and seal and acknowledge this present document. Affidavit number 4677. Signed and acknowledged before me by Mr. Félix González Figueroa and by Mrs. Aida Luz Chico Peña, of the aforementioned personal information and all of whom I attest and affirm are personally known by me. In Lares, Puerto Rico, on the 18th day of June of 1981."
(Docket No. 38, pgs. 32-33).

17

content of the contract; or (iii) simulation in the subjects of the contract. Martínez v. Colón Franco
125 D.P.R. at 26. Simulation in the nature of the contract takes place when one simulates a contract
but in reality a different contract is being executed such as when one simulates a purchase-sale
transaction (agreement) but the real transaction is a donation. Id. at 26. Simulation in the content of
the contract occurs when the date, the price, the object or any other element of the contract is
simulated (concealed). Id. Simulation regarding the identity of the contracting parties (subjects of the
contract) is more complex in nature and may occur in two (2) different modalities; namely; (a) when
a third party is placed between the seller and the buyer and he or she appears as a contracting party,
thus concealing the real purchaser or buyer; and (b) when the person that is the beneficiary of the
transaction is presented as a contracting party while concealing the actual person that is indeed
realizing the transaction. Id at 27-28; See Federico De Castro y Bravo, El Negocio Jurídico, §§415-
420, pgs. 341-345, Madrid, Ed. Inst. Nac. Est. Jur., 1971. Moreover, the doctrine of relative
contractual simulation also recognizes the use of the counterdocument or counterstatement as
evidence of the real and dissimulated contract. See Reyes v. Jusino Diaz, 116 D.P.R. 275,  (1985),
16 P.R. Offic. Trans. at 349-350; José Puig Brutau, Fundamentos de Derecho Civil, Vol. I, T.II, 448-
450, Barcelona, Ed. Bosch (3rd. Ed.1988).

The court finds that the Plaintiff has not placed this court in a position to adjudicate whether
the doctrine of relative contractual simulation applies to the instant case since it has not indicated
under which modality of said doctrine the alleged relative contractual simulation occurred and
whether the requirements of that modality were satisfied. The court notes that if certain requirements
are satisfied, under the doctrine of relative contractual simulation, if there is an underlying real
transaction under a dissimulated contract, the same may be valid. However, at this point in time, the
parties have not placed the court in a position to readily rule on this particular legal issue.

Conclusion

For the reasons stated herein, this court finds that the doctrine of acquisitive prescription
*secundum tabulas* is inapplicable in the instant case. Thus, Plaintiff's motion for summary judgment
is GRANTED in part as to the inapplicability of the doctrine of acquisitive prescription and

18

Defendants' motion for summary judgment is DENIED in part as to the applicability of the doctrine of acquisitive prescription. A pre-trial is scheduled for November 4, 2011 at 9:30am.

SO ORDERED.

In San Juan, Puerto Rico, this 8th day of September 2011.

Enrique S. Lamoutte
United States Bankruptcy Court